STROOCK & STROOCK & LAVAN LLP
ALESHA M. DOMINIQUE (State Bar No. 343275)
2029 Century Park East, 18th Floor
Los Angeles, CA 90067-3086
Telephone:  310.556.5800
Facsimile:  310.556.5959
Email:        adominique@stroock.com

TIMOTHY K. GILMAN (*Pro Hac Vice* Application forthcoming)
180 Maiden Lane
New York, NY 10038-4982
Telephone:  212.806.5400
Facsimile:  212.806.6006
Email:        tgilman@stroock.com

Attorneys for Plaintiff Candy Club, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDY CLUB, LLC, a California Limited Liability Company,<br><br>                    Plaintiff,<br><br>            v.<br><br>B. DAVIS DISTRIBUTING, INC., d/b/a THE NUT GARDEN, a Utah Corporation; BRETT DAVIS, an individual; JANAE DAVIS, an individual; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. 2:22-cv-07933<br><br>**COMPLAINT FOR:**<br><br>**(1) TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a));**<br><br>**(2) STATE UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200); AND**<br><br>**(3) COMMON LAW UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Candy Club, LLC ("Candy Club") brings this Complaint against Defendants B. Davis Distributing, Inc. d/b/a The Nut Garden ("The Nut Garden"), Brett Davis, Janae Davis, and Does 1-10, inclusive (collectively, "Defendants"), and alleges as follows:

## INTRODUCTION

1.      Candy Club disrupted the candy industry when it entered the market with its premium candy products "wrapped" in attention-grabbing, original and distinctive candy jars.  Standing apart from its competitors, Candy Club's unmistakable, colorful and playfully-designed candy jars provide candy lovers with a unique and fun premium candy experience, and its business partners with eye-catching, fun shelf displays.  Its products are a feast for all the senses.

2.      Founded in a small garage in Southern California, Candy Club has been delivering whimsical jars filled with premium, curated candies directly to candy lovers' homes since 2014.  Inspired to bring the fun of an old-fashioned candy store directly to people's homes, Candy Club founder and Chief Executive Officer, Keith Cohn, with the help of his two young daughters, invested enormous amounts of time and resources to make his dream a reality.  Mr. Cohn began offering monthly subscription boxes of colorful jars filled with high-quality candies — and the CANDY CLUB® brand was born.

3.      In the years since, Candy Club's customers have asked for even more unique, premium candies.  They wanted what was hard for them to find.  In response, Candy Club scoured the globe looking for the best in class candy, seeking classic flavors with a modern-day twist.  Today, Candy Club offers over 100 types of curated candies in various shapes and delicious premium flavors for its customers to enjoy.

4.      Adding to its classic candy flavors, Candy Club developed distinctive packaging for its products, added a playful name, and then offered candy to consumers at an affordable price-point.

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

LA 52701051

5.      Candy Club's distinctive trade dress instantly conveys Candy Club's reputation for delightful, premium candies and lets consumers know that the candy comes from Candy Club.  As a result, its product packaging enjoys trade dress protection.  Representative samples of Candy Club's distinctive trade dress are below:

 

6.      Defendants are well aware of Candy Club's trade dress rights, including their tremendous value.  Upon information and belief, immediately before launching their "Sweetables" candy brand, ***Defendants Brett Davis and Janae Davis signed up as fake Candy Club customers*** on the interactive wholesale online website, Faire (www.faire.com) (the "Faire Website"), thereby allowing them to receive Candy Club's ***weekly*** promotional emails advertising Candy Club's products in their distinctive trade dress.

7.      As further alleged below, Defendants then packaged their own knockoff "Sweetables" candy products in copycat product packaging and offered the products at a lower price to consumers throughout the United States, including through their interactive online website (https://thenutgarden.com/) ("The Nut Garden Website"), the Faire Website, numerous online third-party resellers, and in their retail store in Utah.  An example of Defendants' blatant copying is shown below.

//

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

- 3 -

| **Candy Club Products** | **Knockoff "Sweetables" Products** |
|---|---|
|  |  |
|  |  |

8.     Defendants are now flooding the market with confusingly similar candy products that harm Candy Club's goodwill and reputation.

9.     Upon information and belief, Defendants sell copycat candy in a direct effort to confuse consumers, unlawfully siphon sales from Candy Club, and intentionally damage Candy Club's valuable intellectual property rights.

10.     Immediately upon learning of Defendants' infringement, Candy Club sent Defendant The Nut Garden a cease and desist letter dated September 26, 2022, to which it responded on October 5, 2022, denying infringement and refusing to stop selling its candy in copycat packaging.

11.     As a result, Candy Club has been left with no choice but to file this lawsuit.

//

//

- 4 -

## **PARTIES**

1

2       12.     Candy Club is a limited liability company organized and existing under

3   the laws of California, having its principal place of business at 5855 Green Valley

4   Circle, Suite 101, Culver City, California 90230.

5       13.     Upon information and belief, Defendant B. Davis Distributing, Inc. is a

6   Utah domestic corporation, doing business as The Nut Garden, and having its

7   principal place of business at 13863 S 2700 W, Unit 204, Bluffdale, Utah 84065.

8       14.     Upon information and belief, Defendant Brett Davis is an individual

9   residing in South Jordan, Utah.  Mr. Davis is the founder and owner of The Nut

10  Garden and The Nut Garden Website, and operates The Nut Garden storefront on the

11  Faire Website.  Upon information and belief, Mr. Davis also controls branding and

12  marketing for the Sweetables products sold by The Nut Garden.  Mr. Davis is the

13  primary point of contact for The Nut Garden and the Sweetables products.

14      15.     Upon information and belief, Defendant Janae Davis is an individual

15  residing in South Jordan, Utah.  Ms. Davis controls branding and marketing for The

16  Nut Garden and the Sweetables products.  Ms. Davis selected the Sweetables candy

17  names and discussed them with Mr. Davis before launching the brand.  Upon

18  information and belief, Ms. Davis also found the building in which The Nut Garden

19  currently resides and from which Sweetables products are sold.

20      16.     Candy Club is not aware of the true names and capacities identified

21  herein as Does 1 through 10, inclusive, and therefore fictitiously names said

22  Defendants.  Candy Club will amend this Complaint to allege the true names and

23  capacities of these fictitiously named Defendants when their identities are

24  ascertained.  Upon information and belief, each of the fictitiously named defendants

25  is responsible in some manner for the events and conduct alleged herein.

26      17.     Upon information and belief, each Defendant was in some manner

27  responsible for the acts alleged herein and the harm, losses, and damages suffered by

28  Candy Club as alleged hereinafter.  Candy Club is also informed and believes, and

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

COMPLAINT
Case No. 2:22-cv-07933

LA 52701051

based thereon alleges, that while participating in such acts, each Defendant was the agent, principal, and/or alter ego of the other Defendants, and was acting in the course and scope of such agency and/or acted with the permission, consent, authorization or ratification of the other Defendants.

## JURISDICTION & VENUE

18.  This Court has subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks); and 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws).

19.  This Court has jurisdiction over the state law claims in this action pursuant to 28 U.S.C. Section 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

20.  This Court has personal jurisdiction over Defendants because they have committed and continue to commit acts of infringement in violation of 15 U.S.C. § 1125, and place infringing products into the stream of commerce, with the knowledge or understanding that such products are sold in the State of California, including in this District.  The acts by Defendants cause injury to Candy Club within this District.

21.  Upon information and belief, Defendants also derive revenue from the sale of infringing products within this District, and expect their actions to have consequences within this District.

22.  Venue is proper within this District under 28 U.S.C. §§ 1391(b) and 1367(a) because Defendants transact business within this District including offering for sale in this District products that infringe the Candy Club's trade dress.  In addition, venue is proper because Candy Club's principal place of business is in this District and Candy Club suffered harm in this District.

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

- 6 -

**GENERAL ALLEGATIONS**

*Candy Club's Innovative Business and Trade Dress*

23.    Founded in 2014, Candy Club is a well-known, premium candy company that curates and distributes its candy products to millions of consumers across the world in its distinctive product packaging.

24.    In addition to its monthly CANDY CLUB® subscription service and online website (www.candyclub.com), Candy Club's wholesale services provide consumers with the opportunity to purchase everything from individual cups and gift sets, to everyday joy, and seasonal and holiday collections.  Constantly innovating, Candy Club also creates a number of limited collections, including an "Artist Collection" in which its candy jars feature iconic artwork by Claude Monet and Vincent Van Gogh.  Candy Club prides itself in offering something for all occasions and tastes.

25.    Candy Club's instantly recognizable trade dress stands out from other competitors in the candy industry.  As shown below, Candy Club's trade dress has a distinctive presentation and appearance—a total image, design, and overall appearance that is unique, including features such as size, shape, color, and color combinations.  Candy Club's product packaging immediately became closely associated with Candy Club.

//
//
//
//
//
//
//
//
//

- 7 -

LA 52701051

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086




26.     Candy Club's products have amassed significant goodwill and are continuing to grow in popularity.

27.     Over the past several years, Candy Club has grown from selling its products through its online website (www.candyclub.com) alone to now offering its candies in more than 30,000 stores throughout the United States, Europe, and Canada.  Candy Club's candies are sold in major department stores and retailers such as Macy's, Kohl's, JCPenney, Hobby Lobby, The Paper Store, Rite Aid, Barnes & Noble, Claire's, The Fresh Market, and Ace Hardware; online and offline gift shops, such as Harry & David; neighborhood boutique shops; resort hotels; and small roadside stops.

28.     Candy Club also has established strong partnerships with online wholesale marketplace platforms Faire, Tundra, and Abound, with each one serving as an integral part of business for Candy Club and its business-to-business (B2B) customers.  In 2021, Candy Club was the top-selling brand in the food and beverage category on the entire Faire Website, surpassing numerous other brands.

29.     Most recently, Candy Club began to promote its candy products by sponsoring the Nickelodeon children's series *Baby Shark's Big Show!*.

//

COMPLAINT
Case No. 2:22-cv-07933

LA 52701051

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

30.     Candy Club's popularity is reflected in its sales and revenue.  In 2021, Candy Club's overall revenue was approximately $17 million and its B2B revenue increased to $14.7 million.

31.     Candy Club's success has been driven by factors such as its reputation for creating irresistible, premium candy in a range of flavors, and the consistent use of its eye-catching, distinctive trade dress.  Candy Club's consistent use of its distinctive trade dress drives much of the company's popularity and success.

32.     Some of the elements of Candy Club's distinctive trade dress at issue in this case, include, without limitation, a distinctive combination of the following source-identifying elements:

- a clear or transparent round jar through which colorful candies or nuts are immediately visible;
- a clear or transparent label wrapped around the jar containing a colorful, geometric shape that is horizontally positioned on the front of the jar;
- a playful, candy name in a block font on the colorful, geometric shape;
- the "Candy Club" brand name in a block font on the label and positioned slightly above the colorful, geometric shape;
- a colorful, circular lid;
- a uniquely placed, colorful tamper seal on the outer-right side of the jar containing the "Candy Club" brand name printed down the side of the tamper seal (from the consumer's perspective); and
- the placement and proportion of these elements in relation to one another (the "Candy Club Trade Dress").

33.     Candy Club has continuously used the Candy Club Trade Dress since at least as early as August 2018.  The Candy Club Trade Dress is distinctive, non-functional, and serves to identify Candy Club as the source of its products.

34.     The total image and overall appearance of the Candy Club Trade Dress has resulted in products that are a remarkable success and are uniquely associated

- 9 -

with Candy Club as their source.  Indeed, Candy Club's products, with their branded packaging, have been extensively advertised and sold throughout the United States, including in California and across the world, with the vast majority of advertisements featuring photographs of the Candy Club Trade Dress.

35.     In addition, Candy Club products have received widespread unsolicited comment and attention, with such commentary typically including images of products with the Candy Club Trade Dress.

36.     Candy Club's successful CANDY CLUB® candy subscription service boasted 35,000 members at its peak, and its popular subscription boxes were recently named one of "The 10 Best Candy Subscription Boxes To Feed Your Sweet Tooth."[1]

37.     The Candy Club Trade Dress has come to represent and symbolize the high quality of Candy Club products and enjoys substantial, valuable goodwill among consumers.

38.     In addition to its inherent distinctiveness, through Candy Club's extensive advertising and promotion, the Candy Club Trade Dress has been firmly established as having gained secondary meaning.  Consumers readily connect the defined trade dress exclusively with Candy Club.

39.     Since 2014, Candy Club has invested significant time and spent millions of dollars in advertising and promoting the Candy Club brand.  To date, Candy Club has sold more than 8 million jars of candy in the Candy Club Trade Dress.

40.     In 2019, to distinguish its highly popular holiday and limited release collections from the rest of its product lines, Candy Club introduced a new tamper seal to the Candy Club Trade Dress while continuing to use the original Candy Club Trade Dress on its traditional candies.  The new, uniquely placed, colorful tamper seal starts as a circle placed on the top of the colorful circular lid and extends down the outer-right side of the jar (at a 90 degree angle) in a predominately rectangular

---

[1] https://www.delish.com/kitchen-tools/kitchen-secrets/g40587788/best-candy-subscription-box/

- 10 -

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

LA 52701051

shape with a pointed end.  The tamper seal contains text descriptive of the collection printed on the top and down the right side of the tamper seal (from the consumer's perspective).  An example of the new tamper seal is depicted below.

 

### *Defendants Deliberately Copy Candy Club's Products*

41.    Upon information and belief, Defendant The Nut Garden is a manufacturer and distributor of snack foods, including candies.

42.    In 2017, Defendants began promoting and selling gummy candies, nuts and dried fruit items under "The Nut Garden" brand through The Nut Garden Website.  Initially, Defendants packaged The Nut Garden candies in plastic bags as reflected in their posts on social media:

//

//

//

//

//

//

//

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

COMPLAINT
Case No. 2:22-cv-07933

LA 52701051

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086



43.     Upon information and belief, after a rocky start in which Defendant Mr. Davis publicly admitted to "scrambl[ing] to source products" for his snack business,[2] Defendants chose to forego the substantial time and financial investment required to develop a unique, eye-catching, and playful candy product.  Instead, Defendants took a short cut – they ripped-off the Candy Club Trade Dress.

44.     Indeed, Defendant Mr. Davis publicly admitted that The Nut Garden was "doing what [it] can on tighter budget than [it would] like . . . ."[3]  Upon information and belief, this included developing an unlawful scheme to trade off the popular and positive goodwill associated with Candy Club and the Candy Club Trade Dress.

45.     Upon information and belief, as a part of their unlawful scheme, Defendants Mr. Davis and Ms. Davis both signed up as fake Candy Club customers on the Faire Website on February 4, 2021 and July 27, 2021, respectively.

46.     By pretending to be Candy Club customers, Defendants Mr. Davis and Ms. Davis gained access to Candy Club's weekly promotional and marketing

//

---

[2] https://voyageutah.com/interview/meet-brett-davis-of-the-nut-garden/
[3] https://issuu.com/mycityjournals/docs/herriman_se_april_web_6a3395efe336a9 at p. 21.

- 12 -

COMPLAINT
Case No. 2:22-cv-07933

LA 52701051

campaign emails for Candy Club products which included images of candies packaged in the Candy Club Trade Dress.

47.     Upon information and belief, on August 25, 2021, almost immediately after Mr. Davis and Ms. Davis both signed up as fake Candy Club customers, they began to promote and offer for sale through The Nut Garden Website their knockoff Sweetables candy products in product packaging blatantly ripped-off from Candy Club (the "Infringing Sweetables Products").  Non-exhaustive examples of the Infringing Sweetables Products appear below:

| **Candy Club Trade Dress** | **Infringing Sweetables Products** |
|---|---|
|  |  |
|  |  |

//
//
//
//

COMPLAINT
Case No. 2:22-cv-07933

LA 52701051

| **Candy Club Trade Dress** | **Infringing Sweetables Products** |
|---|---|
|  |  |
|  |  |
|  |  |

//
//
//
//
//
//

COMPLAINT
Case No. 2:22-cv-07933

LA 52701051

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

| **Candy Club Trade Dress** | **Infringing Sweetables Products** |
|---|---|
|  |  |
|  |  |
|  |  |

48.     The Infringing Sweetables Products are a deliberate imitation of the Candy Club Trade Dress.  By way of example, and without limitation, like the Candy Club Trade Dress, the Infringing Sweetables Products feature the following elements:

- a clear or transparent round jar through which colorful candies or nuts are immediately visible;

- 15 -

- a clear or transparent label wrapped around the jar containing a colorful, geometric shape that is horizontally positioned on the front of the jar;

- a playful, candy name in a block font on the colorful, geometric shape;

- the "Sweetables" brand name in a block font on the label and positioned slightly above the colorful, geometric shape;

- a colorful, circular lid;

- a uniquely placed, colorful tamper seal on the outer-right side of the jar containing the "Sweetables" brand name printed down the side of the tamper seal (from the consumer's perspective); and

- the identical or similar placement and proportion of these elements in relation to one another.

49. The Infringing Sweetables Products also are similar in size to the Candy Club Trade Dress and contain names which mimic numerous Candy Club product names.

50. Upon information and belief, Defendant Ms. Davis selected the names for the Infringing Sweetables Products and discussed them with Defendant Mr. Davis before finalizing them. Defendants' piggyback candy names include the following: Strawberry Swirly Wheels, Rainbow Laces, Jumbo Sour Bubblegum Bottles, Sour Green Apple Laces, Sweetly Sour Piglets, Rainbow Sour Belt Bites, Cherry Cola Sour Bottles, and Groovy Grape Laces.

51. Upon information and belief, in January 2022, Defendants The Nut Garden and Mr. Davis decided to escalate their deceptive actions.

52. On January 21, 2022, in an effort to show bona fide use in commerce of the Sweetables word mark in connection with a then-pending trademark application (U.S. Appl. Serial. No. 90/673,368), Defendant Mr. Davis submitted to the United States Patent and Trademark Office the below photograph showing the Sweetables products in the packaging blatantly ripped-off from Candy Club.

//

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

COMPLAINT
Case No. 2:22-cv-07933

LA 52701051

| Candy Club Trade Dress | Infringing Sweetables Products |
|---|---|
|  | |

53.     In addition, upon information and belief, on or around January 2022, Defendants The Nut Garden and Mr. Davis set up a business account and storefront on the Faire Website for The Nut Garden.  Defendants began to directly compete with Candy Club on the Faire Website by promoting and/or selling the Infringing Sweetables Products to third-party retailers in the United States and across the world.[4]

54.     The Faire Website is an expansive online marketplace where Candy Club was the highest selling brand in the food and beverage category in 2021.

55.     By promoting and selling the Infringing Sweetables Products to consumers, including third-party retailers on the Faire Website, Defendants The Nut Garden and Mr. Davis deliberately intended to trade off the popularity and substantial goodwill associated with Candy Club and the Candy Club Trade Dress.

56.     Upon information and belief, Defendants The Nut Garden and Mr. Davis's malicious actions violate Faire's Terms of Service dated April 21, 2021 to

_____

[4] https://www.faire.com/brand/b_dvptx7v743

COMPLAINT
Case No. 2:22-cv-07933

LA 52701051

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

which they agreed to abide when setting up their business account on Faire.[5]  In the Terms of Service, which are governed by the laws of the State of California, Faire members and users agree to not use the platform to infringe, misappropriate or violate a third party's trademark rights or other intellectual property rights, among other things.

57.    In brazen disregard for Candy Club's established trade dress rights and Faire's Terms of Service, the Infringing Sweetables Products directly and unlawfully compete with Candy Club products in the marketplace, including on Faire.

58.    On the Faire Website, the Infringing Sweetables Products are promoted and offered to resellers right next to Candy Club's wholesale candy products and both parties require resellers to place minimum orders of $200.00.

59.    In advertising and offering for sale the Infringing Sweetables Products, including on The Nut Garden Website and the Faire Website, **Defendants intentionally draw consumers to their imitation product packaging**.  By way of example, Defendants promote Sweetables candies as "**fun candy jars!**"[6] "**gourmet candy jars**,"[7] and "an assortment of **cute, gifty, jars of candies**."[8]

60.    Notwithstanding Candy Club's cease and desist letter, Defendants continue to promote, advertise, and sell the Infringing Sweetables Products through The Nut Garden Website, the Faire Website, and various third-party retailers where consumers can view the Sweetables products and place orders.  Upon information and belief, Defendants also continue to sell the Infringing Sweetables Products in their retail store.

61.    Upon information and belief, Defendants ship Sweetables candy throughout the United States in individual and wholesale quantities, including in California and Los Angeles County.

---

[5] https://www.faire.com/tos
[6] https://thenutgarden.com/collections/sweetables
[7] https://thenutgarden.com/products/cotton-candy-salt-water-taffy-sweetables?_pos=3&_sid=8453b6ab1&_ss=r
[8] https://voyageutah.com/interview/meet-brett-davis-of-the-nut-garden/

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

COMPLAINT
Case No. 2:22-cv-07933

LA 52701051

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

*Defendants Are Aware of Design Packaging Alternatives*

62.     The Candy Club Trade Dress is non-functional in that there exist wide and varied ways to design packaging that contains candy.  As such, Defendants are not unduly impeded from engaging in their own design and presentation of the Sweetables products, so long as they do not steal from the Candy Club Trade Dress.

63.     Defendants are no doubt aware that there are many design packaging alternatives for their candies.  Upon information and belief, Defendants' fill their imitation candy jars with candies Defendants previously sold for years in plastic bags.

64.     Upon information and belief, Defendants continue to advertise and offer for sale on The Nut Garden Website identical candy products both in plastic bags and as Infringing Sweetables Products as depicted below.

| Defendants' Alternative Packaging | Infringing Sweetables Product |
|---|---|
|  |  |

65.     None of the claimed elements of the Candy Club Trade Dress in combination are essential to packaging candy or confer any benefit to Defendants aside from enabling them to trade on Candy Club's reputation by intentionally imitating the look and feel of the Candy Club Trade Dress.

66.     Defendants deliberately copied every element of the Candy Club Trade Dress for use in connection with the Infringing Sweetables Products.

- 19 -

67.    The products offered for sale and sold by Defendants are identical and/or nearly identical to those of Candy Club, and are sold in identical trade channels and are marketed and sold to identical classes of consumers who purchase candy with an identical level of sophistication and impulsivity.

68.    The natural, probable and foreseeable result of the intentional, willful and wrongful conduct of Defendants has been to deprive Candy Club of business and substantial goodwill, and to injure Candy Club's relationships with existing and prospective customers.

69.    Upon information and belief, Defendants use the Candy Club Trade Dress in commerce so as to cause a likelihood of confusion between the Infringing Sweetables Products and Candy Club products, or to cause mistake, or to deceive the relevant public into believing that the Infringing Sweetables Products are authorized, sponsored or approved by or are affiliated with Candy Club.  Candy Club is further informed and believes, and based thereon alleges, that by intentionally misappropriating the Candy Club Trade Dress, Defendants are currently causing customer confusion in the marketplace.

70.    Upon information and belief, Candy Club has lost or will lose revenues from the sale of the Infringing Sweetables Products, and has sustained and will sustain damages as a result of Defendants' wrongful conduct in selling, marketing, and distributing the Infringing Sweetables Products.

71.    Upon information and belief, Defendants have been unjustly enriched by its sale and marketing of the Infringing Sweetables Products.

## FIRST CLAIM FOR RELIEF

**(Trade Dress Infringement, Unfair Competition, False Designation of Origin)**

**(Lanham Act Section 43(a), 15 U.S.C. § 1125(a))**

72.    Candy Club incorporates and realleges the preceding paragraphs of this Complaint as though set forth in full.

//

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

- 20 -

73.    Candy Club is the owner of all right and title to the distinctive Candy Club Trade Dress.  The Candy Club Trade Dress, embodied in the packaging for the Candy Club products, is inherently distinctive and not functional.

74.    In addition, based on Candy Club's extensive marketing, promotion, and use, the Candy Club Trade Dress has acquired distinctiveness and enjoys secondary meaning among consumers, instantly identifying Candy Club as the source of the products with which they are used.

75.    Candy Club's extensive promotion of the Candy Club Trade Dress has resulted in Candy Club's acquisition of valuable, legally protected rights in the Candy Club Trade Dress as well as considerable customer goodwill.

76.    Upon information and belief, Defendants have knowingly used and continue to use in commerce, without Candy Club's permission or authorization, Candy Club's asserted trade dress rights, and/or confusingly similar trade dress, in connection with products that Defendants design, manufacture, import, distribute, promote, advertise, offer for sale, and/or sell in the United States, including the Infringing Sweetables Products.

77.    Defendants' line of Sweetables products have misappropriated the Candy Club Trade Dress by mimicking a combination of several elements of that trade dress.  The manufacture and distribution of Defendants' products with packaging that mimics a combination of several elements of the Candy Club Trade Dress is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of Defendants with Candy Club, or as to the origin, sponsorship, or approval by Candy Club of Defendants' goods, services or commercial activities.

78.    Defendants' actions constitute trade dress infringement, unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

//

- 21 -

LA 52701051

79.    Upon information and belief, Defendants knew of the Candy Club Trade Dress when they designed their products, and have refused to change their product or packaging design in response to Candy Club's request.  Accordingly, Defendants' infringement has been and continues to be intentional, willful and without regard to Candy Club's rights in the Candy Club Trade Dress.

80.    As a direct and proximate result of Defendants' unlawful acts and practices, including those set forth above, Defendants have caused, are causing, and unless immediately enjoined by this Court, will continue to cause immediate and irreparable harm to Candy Club, for which there is no adequate remedy at law, and for which it is entitled to injunctive relief.

81.    Upon information and belief, Defendants have gained profits by virtue of their infringement of the Candy Club Trade Dress.

82.    Candy Club also has sustained damages as a direct and proximate result of Defendants' infringement of the Candy Club Trade Dress in an amount to be proven at trial.

83.    Because Defendants' actions have been willful, Candy Club is entitled to treble its actual damages or Defendants' profits, whichever is greater, and to an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF

**(Unfair Business Practices – Cal. Bus. and Prof. Code § 17200, *et seq.*)**

84.    Candy Club incorporates and realleges the preceding paragraphs of this Complaint as though set forth in full.

85.    By reason of the foregoing, Defendants have been, and are, engaged in unlawful, unfair and/or fraudulent business practices in violation of California Business & Professions Code § 17200, *et seq.*

//

//

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

LA 52701051

1   86.    Defendants have intentionally traded upon and unfairly benefited from

2   Candy Club's valuable goodwill, reputation, and substantial marketing and

3   promotion, and have been unjustly enriched thereby.

4   87.    Defendants have misappropriated for themselves the commercial value

5   of Candy Club's trade dress rights and have harmed the value of Candy Club's

6   goodwill in the Candy Club Trade Dress.

7   88.    Defendants' acts greatly and irreparably damage Candy Club and will

8   continue to so damage Candy Club unless restrained by this Court; therefore, Candy

9   Club is without an adequate remedy at law.  Accordingly, Candy Club is entitled to,

10  among other things, restitution in an amount to be determined at trial, and an order

11  enjoining and restraining Defendants from advertising and selling their Infringing

12  Sweetables Products.

13                    **THIRD CLAIM FOR RELIEF**

14          **(Violation of California Common Law Unfair Competition)**

15  89.    Candy Club incorporates and realleges the preceding paragraphs of this

16  Complaint as though set forth in full.

17  90.    Candy Club is the owner of all rights and title to, and has valid and

18  protectable prior rights in, the asserted trademarks and trade dress rights.

19  91.    Candy Club engages in the sale and distribution of candy and nut

20  products, employing the asserted trade dress rights in the State of California and has

21  done so since long before Defendants began their infringing use of the Candy Club

22  Trade Dress as alleged herein.

23  92.    Candy Club's trade dress rights are inherently distinctive.  In addition,

24  based on extensive marketing, promotion, and use, the Candy Club Trade Dress has

25  acquired distinctiveness and enjoys secondary meaning among consumers, instantly

26  identifying Candy Club as the source of the products with which they are used.

27  93.    Defendants have reproduced, copied, and imitated Candy Club's trade

28  dress rights in connection with advertising, promoting, and selling candy and related

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA  90067-3086

- 23 -

LA 52701051

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

1 | nut products bearing the infringing trade dress, in competition with Candy Club and
2 | without Candy Club's consent.

3 | 94. Defendants' use of confusingly similar imitations of the Candy Club
4 | Trade Dress has caused and is likely to cause confusion, deception, and mistake by
5 | creating the false and misleading impression that Defendants' goods are produced or
6 | distributed by Candy Club, or are affiliated, connected, or associated with Candy
7 | Club, or have the sponsorship, endorsement, or approval of Candy Club.

8 | 95. Upon information and belief, Defendants' acts of common law unfair
9 | competition have been done willfully and deliberately, and Defendants have profited
10 | and been unjustly enriched by sales that Defendants would not otherwise have made
11 | if not for its unlawful conduct.

12 | 96. Defendants' willful and deliberate acts described herein have caused
13 | injury and damages to Candy Club, and have caused irreparable injury to Candy
14 | Club's goodwill and reputation and, unless enjoined, will cause further irreparable
15 | injury, whereby Candy Club has no adequate remedy at law. Candy Club, therefore,
16 | is entitled to injunctive relief.

17 | 97. Candy Club is also entitled to its actual damages, Defendants' profits,
18 | and an award of costs and attorneys' fees.

19 | 98. Additionally, because Defendants' misconduct as alleged herein has
20 | been willful, malicious, and wanton, Candy Club is entitled to an award of punitive
21 | damages under California law in an amount sufficient to punish Defendants and deter
22 | such misconduct in the future.

## **PRAYER FOR RELIEF**

23 | WHEREFORE, Candy Club prays for relief, as follows:

25 | 1. That the Court enter judgment against each Defendant that:

26 | a. Defendants infringed the rights of Candy Club in the Candy Club
27 | Trade Dress in violation of 15 U.S.C. Section 1125;

28 | //

- 24 -

1    b.      Defendants engaged in unfair competition and deceptive acts and

2  practices in violation of California Business & Professions Code Sections 17200,

3  17500, *et seq.*; and

4    c.      Defendants engaged in unfair competition and deceptive acts and

5  practices in violation of California common law.

6    2.    That the Court enter judgment against each Defendant that the above

7  acts, 1(a)-(c), were willful and intentional making this an exceptional case.

8    3.    That the Court issue a preliminary and permanent injunction enjoining

9  and restraining Defendants and their officers, directors, agents, servants, employees,

10 affiliates, attorneys, and all others acting in privity or in concert with them, and their

11 parents, subsidiaries, divisions, successors and assigns, from:

12    a.      Directly or indirectly infringing the Candy Club Trade Dress or

13 using any other product or packaging design or designations similar to, or likely to

14 cause confusion with, the Candy Club Trade Dress;

15    b.      Passing off Defendants' products as being associated with and/or

16 sponsored or affiliated with Candy Club;

17    c.      Committing any other unfair business practices directed toward

18 obtaining for themselves the business and customers of Candy Club; and

19    d.      Committing any other unfair business practices directed toward

20 devaluing or diminishing the brand or business of Candy Club.

21    4.    That Defendants deliver up to Candy Club for destruction any and all

22 packaging, advertising and promotional materials in Defendants' possession, custody

23 or control, which contain the infringing trade dress.

24    5.    That Candy Club be awarded damages for Defendants' trade dress

25 infringement and unfair competition under the Lanham Act, as well as for unfair

26 competition under California common law.

27 //

28 //

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

- 25 -

6. That Candy Club be awarded all profits resulting from Defendants' infringement of Candy Club's rights and by means of Defendants' unfair competition with Candy Club.

7. That Defendants be ordered to account for and disgorge to Candy Club all amounts by which Defendants have been unjustly enriched by reason of the unlawful acts complained of.

8. That Candy Club be awarded damages resulting from Defendants' infringement in accordance with the provisions of 15 U.S.C. Section 1117.

9. That damages resulting from Defendants' infringement and unfair competition under the Lanham Act be trebled due to Defendants' willfulness, in accordance with the provisions of 15 U.S.C. Section 1117.

10. That Candy Club be awarded exemplary or punitive damages pursuant to California Civil Code § 3294;

11. That Candy Club be awarded a reasonable amount sufficient to reimburse Candy Club for the costs of future corrective advertising.

12. That Candy Club be awarded pre-judgment interest on all infringement and other appropriate damages.

13. That the Court find this case to be exceptional and award Candy Club its reasonable attorneys' fees pursuant to 15 U.S.C. Section 1117, California law, and any other applicable provision of law.

14. That the Court award Candy Club its costs of suit incurred herein.

15. That the Court award Candy Club any other remedy to which Candy Club may be entitled, including all remedies provided for in 15 U.S.C. § 1117, Cal. Bus. & Prof Code §§ 17200, *et seq.*, 17500, *et seq.*, and under any other California law; and

16. For such other or further relief as the Court may deem just and proper.

//

//

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086

- 26 -

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Candy Club hereby demands a trial by jury of all triable issues.

Dated:  October 31, 2022          STROOCK & STROOCK & LAVAN LLP
                                  ALESHA M. DOMINIQUE
                                  TIMOTHY K. GILMAN


                         By:  _____*/s/ Alesha M. Dominique*_____
                                        Alesha M. Dominique

                              Attorneys for Plaintiff
                              CANDY CLUB, LLC

- 27 -

COMPLAINT
Case No. 2:22-cv-07933

LA 52701051

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2022, a copy of the foregoing **COMPLAINT FOR: (1) TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(A)); (2) STATE UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200); AND (3) COMMON LAW UNFAIR COMPETITION** was filed electronically and served by U.S. Mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

_/s/ Alesha M. Dominque_
Alesha M. Dominique

STROOCK & STROOCK & LAVAN LLP
2029 CENTURY PARK EAST, 18TH FLOOR
LOS ANGELES, CA 90067-3086